## Devlin, Appellant, *v.* Osser.

Argued January 23, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edward R. Becker,* with him *Edwin E. Naythons* and *William A. Meehan,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, *Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellees.

OPINION BY MR. JUSTICE O'BRIEN, April 23, 1969:

This is an appeal from the order of the Court of Common Pleas of Philadelphia County, denying the injunction sought by appellant. On August 5, 1968, appellant, William J. Devlin, a citizen-taxpayer and also chairman of the Philadelphia City Republican Committee, filed a complaint in equity seeking to enjoin appellees, the Philadelphia City Commissioners, from conducting proposed in-plant field registration offices, including those within the plant of Rosenau Brothers, clothing manufacturers, and those in the busmen's rooms of nine Philadelphia Transportation Company depots. The gravamen of the complaint was that the registration would not be open and accessible to the public and was thus illegal. The answer filed by appellees indicated that the P.T.C. sites were cancelled; however, it admitted that registration was scheduled at Rosenau Brothers on August 16, 1968, and it was stipulated that other in-plant registrations were contemplated. A hearing was held before the Honorable JOSEPH SLOANE sitting as Chancellor on August 12, 1968, and the proposed registration was delayed pending disposition of the litigation below. On August 21, 1968, the Chancellor issued a decree nisi denying the

injunction and two days later denied appellant's petition for supersedeas. The parties stipulated that the adjudication was to be treated as final, without right of exceptions. This appeal followed.

Two preliminary matters must be disposed of. First, although the registration has already been held at Rosenau Brothers, this appeal is not moot. It was alleged by appellant, and admitted by appellees, that future in-plant registrations were contemplated.

Second, appellees urge that equity has no "jurisdiction" over this matter because there is a statutory remedy at law. Appellees contend that appellant's sole remedy can be found in §42 of The First Class City Permanent Registration Act, Act of March 30, 1937, P. L. 115, 25 P.S. §623-1 et seq. We note that no preliminary objection was made below to the propriety of this case being heard in equity. In *Carelli v. Lyter*, 430 Pa. 543, 244 A. 2d 6 (1968), we held that the objection that there exists an adequate *non*-statutory remedy at law is not truly jurisdictional, merely going to the form of action, and thus cannot be raised at any time, but rather is waived if not raised by preliminary objection. We need not consider at this time whether the same rule should apply where a *statutory* remedy at law is asserted, for the asserted statutory remedy in the instant case is neither adequate nor exclusive. The same contentions made by appellees were made by the same appellees in the trial court in a companion case, *DeJoseph v. Osser*, 434 Pa. 414, 254 A. 2d 300 (1969), involving bus registration schedules. It was answered quite well in that court by Judge SPAETH, and we adopt the views stated there.

We thus turn to the merits. Appellant urges that in-plant registrations like that at Rosenau Brothers violate the mandate of The First Class City Registra-

tion Act, supra, in that they are not open to the public. Appellees dispute such a statement both on the law and on the facts. They claim that there is no requirement that all registration places be open to the public,[1] and that assuming that such a requirement does exist, the Rosenau Brothers' registration program met the requirement. We cannot agree with either of appellees' contentions.

Section 17(e) of the Act requires that each place of registration be "open for the registration of electors." The only reasonable interpretation of such a requirement is that the places be open to the public at large. Numerous canons of statutory construction lead us to such a conclusion. Section 51 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, art. IV, 46 P.S. §551, provides that "Every law shall be construed, if possible, to give effect to all its provisions." Section 17(e) of the Registration Act, in addition to requiring the registration places to be "open" also requires that the "commission shall . . . *publicly announce* the address of each place of registration." This requirement would be virtually meaningless if the registration places were not to be open to the public.

Furthermore, the well-known principle of *noscitur a sociis* has relevance here. A word is known by the company it keeps. See Sutherland, Statutory Construction, §4908, 3d Edition (1943). Thus, when §17(a) provides that field registration may take place "at other offices in the city which the commission shall from time to time have power to establish and discon-

---

[1] The Chairman of the Board of Commissioners did testify that the law required that registration places be open to the public. This in no way estops him from contending here that no such requirement exists. However, it is some indication of the reasonable interpretation of the statute.

tinue," and §17(e) provides that such offices "shall be open for the registration of electors," a guide to the meaning of "open offices" can be found from the types of places *expressly* prescribed by §17 as being proper for registration. These are: (1) polling places; (2) schools; and (3) public buildings. These are, by their very nature, open to the public at large, and if there is any uncertainty about the proper construction here, the doctrine of *noscitur a sociis* would indicate that all places of registration must be open to the public.

Finally, and most important, §52(3) of the Statutory Construction Act, supra, provides that the courts may be guided by the presumption "that the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth." A system in which the right to register at a particular place is denied to all but a select few is at least as constitutionally faulty as one in which the weight of a person's vote is diluted because of his place of residence. *Butcher v. Bloom*, 415 Pa. 438, 203 A. 2d 556 (1964); *Reynolds v. Sims*, 377 U.S. 533, 566, 84 S. Ct. 1362 (1964). Moreover, the possibilities for abuse are overwhelming. To give the most flagrant example, simply suppose a registration at the headquarters of a particular party. It is thus our firm view, guided by numerous rules of statutory construction, that all places of registration must be open to the public at large.

Nor is that requirement met in the instant case. The registration for employees of Rosenau Brothers was to take place in the cafeteria, admittedly *closed* to the general public. Appellees, however, claim that the registration facilities set up in the lobby of Rosenau Brothers, which apparently was open to the public, cured any problems. We disagree. The evidence here is clear that the lobby was quite small, that it would be extremely crowded with registrars and a full com-

plement of watchers; and that it might be necessary for prospective registrants to enter the building one at a time. On the other hand, the employees of Rosenau Brothers were permitted to register in the cafeteria. The advantages to Rosenau Brothers employees in the event of inclement weather, or even under ordinary circumstances, in light of the crowding in the lobby, should be obvious.

Nor do we rest our decision merely on the basis that the facilities for the public were inadequate. These separate facilities are inherently inadequate and unequal, because the favored group of employees is given a choice of facilities, whereas the public at large is not. To permit the arrangement appellees seek would not comport with the purposes of the statute.

The decree of the court below is reversed. Costs on appellees.